

***POSTED ON WEBSITE***
***NOT FOR PUBLICATION***

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

FILED

SEP 3 0 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 06-22225-D-7 |
| BETSEY WARREN LEBBOS, | |
| Debtor. | |
| LINDA SCHUETTE, | |
| Plaintiff, | Adv. Pro. No. 11-2386-D |
| v. | Docket Control No. MPD-1 |
| JOSEPH GIOVANAZZI as trustee, | DATE:  August 31, 2011 |
| Defendant. | TIME:  10:00 a.m. |
| | DEPT:  D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or Issue preclusion.**

<u>**MEMORANDUM DECISION**</u>

Plaintiff Linda Schuette, the trustee in the chapter 7[1] case in which this adversary proceeding is pending (the "trustee"), seeks partial summary judgment against defendant Joseph Giovanazzi, as trustee of the Aida Madeleine Lebbos No. 2 Trust and of the Aida Madeline Lebbos Trust II ("Giovanazzi"). Giovanazzi opposes the motion.  For the reasons set forth below, the court will grant the motion.

---

1.  Unless otherwise indicated, all Code, chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

1            I.  BACKGROUND

2 A.  Adversary No. 07-2006

3        On January 3, 2007, the plaintiff filed a complaint seeking

4 to set aside alleged fraudulent transfers of a condominium in

5 Long Beach, California (the "condo" or the "property"), to

6 recover property and/or monetary damages, for turnover of

7 property, and for declaratory relief, Adv. No. 07-2006.  The

8 defendants were the debtor in the underlying chapter 7 case,

9 Betsey Warren Lebbos, individually and as a trustee of the Aida

10 Madeleine Lebbos No. 2 Trust and as a trustee of the Aida

11 Madeline Lebbos Trust II ("Lebbos"), and Jason Gold and Thomas

12 Carter, as co-trustees of the Aida Madeleine Lebbos No. 2 Trust

13 and as co-trustees of the Aida Madeline Lebbos Trust II ("Gold"

14 and "Carter").[2]

15        On February 5, 2007, Lebbos filed motions to dismiss the

16 proceeding and to transfer the venue of the proceeding to the

17 Central District of California, and on February 28, 2007, Lebbos

18 filed a request to disqualify the undersigned as the judge in the

19 proceeding.  Those motions were denied.  On August 17, 2007, Gold

20 and Carter filed motions to dismiss and to transfer venue and a

21 request to disqualify the undersigned, and Lebbos filed second

22 motions to dismiss and to transfer venue.  On September 6, 2007,

23 _____

24        2.  During the long history of Lebbos' chapter 7 case, the
   parties have used both of these names for the trust.  Lebbos, for
25 example, filed an answer in Adv. No. 07-2006 in which she
   referred to the Aida Madeline Lebbos Trust No. II as non-
26 existent, yet the grant deed by which she purported to convey the
   property to Gold and Carter, as trustees, refers solely to the
27 Aida Madeline Lebbos Trust II.  The parties have not raised this
   discrepancy as an issue; for ease of reference here, the court
28 will refer to the "Trust."

                          - 2 -

Lebbos filed a second request for disqualification.  The motions were denied.  At least two appeals were taken by each of the defendants.

On November 28, 2007, Schuette filed motions against all three defendants for orders imposing sanctions against them, including striking their answers and entering their defaults for failure to appear at depositions and failure to produce documents.  All three defendants opposed the motions.  On February 13, 20, and 21, 2008, the court issued lengthy memorandum decisions explaining its reasons for granting the motions as to each defendant.  On February 22, 2008, Lebbos filed a notice of appeal, and on March 3, 2008, Gold and Carter appealed.  Lebbos and Gold filed motions for a stay pending appeal and Carter filed a joinder to Gold's motion.  The motions were denied.

On March 11, 2008, the trustee filed an application, based on the order entering their defaults, for a default judgment against all three defendants.  On March 26, 2008, Lebbos filed a third request for disqualification of the undersigned, along with opposition to the application for default judgment, and the same day, Gold and Carter filed joinders in Lebbos' opposition.

Hearing on the trustee's application was scheduled for April 9, 2008, and was continued by the court to April 15, 2008.  At the request of attorney John Read, who had by then made several special appearances on behalf of Lebbos in the chapter 7 case and the various adversary proceedings, the court continued the hearing to April 17, 2008.  A hearing was held that day, at which Gold appeared and attorney John Read made a special appearance

- 3 -

1  for Lebbos.  The same day, this court issued findings of fact and
2  conclusions of law on the plaintiff's application for default
3  judgment against all the defendants, along with a judgment
4  against all of them (the "Judgment"), further described below.

5      Three days earlier, on April 14, 2008, Gold and Carter,
6  having by that time participated heavily in the adversary
7  proceeding, including seeking to have it dismissed, to have the
8  venue changed, and to have this judge disqualified; having
9  appealed the decisions against them; having thrown up unrelenting
10  roadblocks to the trustee's discovery efforts; knowing full well
11  that their defaults had been entered over their objections; and
12  knowing full well of the hearing on the trustee's motion for
13  default judgment -- at that time, scheduled for the very next
14  day, signed and caused to be recorded a quitclaim deed purporting
15  to transfer the condo to Giovanazzi, as trustee of the Aida
16  Madeline Lebbos Trust II (the "Quitclaim Deed").  The Quitclaim
17  Deed reflects a documentary transfer tax of $0.

18      On August 13, 2008, Giovanazzi, as trustor, signed a deed of
19  trust purporting to encumber the condo in favor of Aida Madeleine
20  Lebbos, Cameron Dacquila, and Brandon Dacquila, to secure an
21  obligation of $750,000 (the "Deed of Trust").  The beneficiaries
22  are, respectively, Lebbos' daughter and grandchildren.  (The same
23  individuals are also, apparently, the beneficiaries of the
24  Trust.)  The Deed of Trust was recorded on September 19, 2008.
25  On August 27, 2008, Giovanazzi filed an unlawful detainer action
26  claiming to be the owner of the property and seeking possession
27  (the "Unlawful Detainer Action").
28  / / /

- 4 -

1    As pertinent to this motion, the Judgment determined that:

2        • The transfer of the condo from Lebbos, an unmarried woman,

3    to Lebbos as trustee of the Trust, on or about August 19, 2004,

4    is set aside and avoided and is of no force or effect;

5        • The transfer of the condo from Lebbos as trustee of the

6    Trust to Gold and Carter as trustees of the Trust, on or about

7    May 25, 2005, is set aside and avoided and is of no force or

8    effect;

9        • Recovery of all right, title, and interest in and to the

10    condo held by Lebbos, Gold, and Carter, in any capacity, is

11    awarded to the trustee, and the interest of the trustee in the

12    condo is superior to any interest of Lebbos, Gold, and Carter,

13    and each of them, in the condo.

14    The Judgment also granted immediate access to, control over,

15    and possession of the condo to the trustee, and permanently

16    enjoined Lebbos, Gold, and Carter from conveying, transferring,

17    encumbering, or otherwise affecting the title to or encumbrances

18    on the condo.  As seen above, three days earlier, unknown to the

19    trustee, Gold and Carter had signed and recorded the Quitclaim

20    Deed in favor of Giovanazzi.

21    B.  Prior Role of Giovanazzi

22    At the time he was named on the Quitclaim Deed, Giovanazzi

23    was no stranger to Lebbos' bankruptcy case.  On January 2, 2008,

24    he had filed two declarations in the case -- one in support of

25    Lebbos' motion to terminate the services of the chapter 7

26    trustee, the other objecting to the trustee's settlement of a

27    federal district court action brought by Lebbos in 2002.

28    Giovanazzi testified he was the attorney of record for Lebbos in

a $5 to $20 million lawsuit then pending in the Los Angeles
County Superior Court in which Lebbos was suing some former
attorneys of hers for fraud; he referred to overwhelming evidence
of fraud on the part of those attorneys; he accused the trustee
and her attorney of fraud and deceit because they had compromised
the claims asserted in that lawsuit (claims that were clearly
property of the bankruptcy estate); and he stated he had advised
the Los Angeles County Superior Court judge that he might be
requesting the court to issue or approve arrest warrants for the
trustee and her attorney.

C.   The Complaint in this Adversary Proceeding

     In the first and third causes of action of this new
adversary proceeding, which are the subject of this motion, the
trustee alleges that:

     • The legal effect of the Judgment is that the two avoided
transfers of title are preserved for the benefit of the estate
under § 551;

     • The transfer evidenced by the Quitclaim Deed is of no
force and effect as to the estate and the trustee's interest in
the condo; it is void and a nullity and does not grant or create
any interest in the condo in favor of Giovanazzi;

     • The transfer evidenced by the Deed of Trust is of no force
and effect as to the estate and the trustee's interest in the
condo; it is void and a nullity and does not grant or create any
interest in the condo in favor of Giovanazzi, Aida Madeleine
Lebbos, Cameron Dacquila, or Brandon Dacquila;

     • The Unlawful Detainer Action is of no force and effect as
to the estate and the trustee's interest in the condo; it is void

- 6 -

1  and a nullity, and does not grant, create, establish, or

2  recognize any interest in the condo in favor of Giovanazzi.

3  II.  ANALYSIS

4       This court has jurisdiction over the motion pursuant to 28

5  U.S.C. §§ 1334 and 157(b)(1).  The Motion is a core proceeding

6  under 28 U.S.C. § 157 (b)(2)(A), (H) & (O).  The Motion was

7  brought pursuant to Fed. R. Civ. P. 56(a), made applicable herein

8  by Fed. R. Bankr. P. 7056.

9  A.  Standards for Determining Motion for Summary Judgment

10       Where a motion for summary judgment is before the court, the

11  court is to render judgment for the moving party where he or she

12  shows that "there is no genuine dispute as to any material fact

13  and the movant is entitled to judgment as a matter of law." Fed.

14  R. Civ. P. 56(a).  The moving party bears the burden of producing

15  evidence showing there is no genuine issue of material fact and

16  that he or she is entitled to judgment as a matter of law.

17  Celotex v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552

18  (1986).

19       Once the moving party has met his or her initial burden, the

20  non-moving party must set forth specific facts, through

21  affirmative evidence, showing that there is a genuine issue of

22  fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

23  256-57 (1986).

24  B.  The Statute of Limitations

25       Giovanazzi contends, first, that the trustee's complaint is

26  barred by the one-year statute of limitations of § 550(f) because

27

28

- 7 -

1  it was not filed within one year after entry of the Judgment.[3]
2  The trustee argues in response that she is not seeking any remedy
3  under § 550, but only under § 551, which provides that a transfer
4  avoided under, for example, § 548 (as in this case) is preserved
5  for the benefit of the estate.  Further, any interest in property
6  preserved for the benefit of the estate under § 551 is
7  automatically brought into the estate under § 541(a)(4).

8      As to avoidable transfers under, for example, § 544, §547,
9  or § 548, there is a distinction to be made between avoidance and
10  recovery.  "Congress dealt separately with the concepts of
11  avoidance and recovery in a number of ways."  Eisen v. Allied
12  Bancshares Mortg. Corp. LLC (In re Priest), 268 B.R. 135, 138
13  (Bankr. N.D. Ohio 2000).  Thus, "avoidance and recovery are
14  independent remedies," and a trustee is not required to seek
15  recovery under § 550 if avoidance is an adequate remedy.  Id.;
16  see also Suhar v. Burns (In re Burns), 322 F.3d 421 (6th Cir.
17  2003) ["avoidance and recovery are distinct concepts and
18  processes."].

19      The trustee's position is that avoidance under § 548,
20  together with preservation under § 551 and § 541(a)(4), provides
21  an adequate remedy to the estate, and therefore, § 550 and its
22  remedies and restrictions, such as the statute of limitations in
23
24  ─────────────────
25      3.  Section 550(a) provides that to the extent a transfer is
    avoided as, for example, a fraudulent transfer, the trustee may
26  recover the property transferred or, if the court so orders, the
    value of the property, for the benefit of the estate.  Under §
27  550(f), an action under § 550 must be brought within one year
    after the avoidance of the transfer on account of which recovery
28  under § 550 is sought or the time the case is closed, whichever
    is earlier.

                              - 8 -

1  § 550(f), are simply not in play here.[4]  She notes that

2  ordinarily, when a trustee has succeeded in avoiding a transfer,

3  "§ 551 provides the default remedy," with a trustee having the

4  discretion to seek an alternative remedy of recovery under § 550.

5  USAA Fed. Sav. Bank v. Thacker (In re Taylor), 599 F.3d 880, 890

6  (9th Cir. 2010), citing Rodriguez v. Daimlerchrysler Fin. Servs.

7  Am. LLC (In re Bremer), 408 B.R. 355, 359 (10th Cir. BAP 2009)

8  ("Preservation is automatic, while recovery is not.  Recovery is

9  necessary only when the remedy of avoidance, and therefore of

10  preservation, is inadequate.").

11       There is a simpler answer; namely, that the trustee obtained

12  the relief available under § 550 at the same time as he avoided

13  the transfers, and there was no need for a further action under §

14  550.  Specifically, in addition to avoiding the transfers by

15  which Gold and Carter as trustees of the Trust ended up with

16  title to the condo, the Judgment also provided that recovery of

17  all right, title, and interest in and to the condo held by

18  Lebbos, Gold, and Carter, in any capacity, is awarded to the

19  trustee, and the interest of the trustee is superior to any

20  interest of Lebbos, Gold, and Carter, and each of them, in the

21  condo.

22       In other words, by way of the Judgment, which has been

23  affirmed by the district court and the Ninth Circuit Court of

24

25       4.  Courts have held that where avoidance is an adequate
    remedy, the trustee is not required to pursue recovery under §
26  550, and the defenses afforded transferees under § 550(c) (non-
    insider transferee) and § 550(e) (good faith transferee) are not
27  available.  Burns, 322 F.3d at 429; Priest, 268 B.R. at 139 (§
    550(e)); Roost v. Associates Home Equity Servs., Inc. (In re
28  Williams), 234 B.R. 801, 805 (Bankr. D. Or. 1999) (§ 550(c)).

1    Appeals and which is now final, the trustee accomplished both

2    avoidance <u>and</u> recovery, and there was no need for further action

3    on the part of the trustee to "recover" the "avoided" transfers.[5]

4    Thus, § 550(f) is irrelevant.  As a result of the Judgment, the

5    effectiveness of which relates back to March 14, 2007, as seen

6    below, at the time Gold and Carter signed and recorded the

7    Quitclaim Deed, they had no interest to convey, and at the time

8    Giovanazzi signed and recorded the Deed of Trust, he had no

9    interest to convey.

10    C.   The Notice of Lis Pendens

11       The fact that Gold and Carter managed to sign and record the

12    Quitclaim Deed immediately before this court entered the Judgment

13    does not defeat the trustee's rights because the Judgment relates

14    back to the date the trustee recorded her notice of lis pendens,

15    March 14, 2007.

16         From the time of recording the notice of pendency of
           action, a purchaser, encumbrancer, or other transferee
17        of the real property described in the notice shall be
           deemed to have constructive notice of the pendency of
18        the noticed action as it relates to the real property
           and only of its pendency against parties not
19        fictitiously named.  The rights and interest of the
           claimant in the property, as ultimately determined in
20        the pending noticed action, shall relate back to the
           date of the recording of the notice.
21

22    Cal. Code Civ. Proc. § 405.24.  Thus, Giovanazzi, to the extent,

23    if any, he may be deemed a "purchaser" or "transferee" by virtue

24

25

26

_____

27       5.   <u>See</u> <u>Lippi v. City Bank</u>, 955 F.2d 599, 605 (9th Cir.
   1992) [it is customary practice to file a consolidated action to
28    avoid a transfer and to recover it or its value].

of the Quitclaim Deed,[6] and Aida Madeleine Lebbos, Cameron Dacquila, and Brandon Dacquila, as encumbrancers, are deemed to have had constructive notice of the pendency of Adv. No. 07-2006. And the trustee's rights and interests, as determined by the Judgment, relate back to the date the lis pendens was recorded, which predated both the Quitclaim Deed and the Deed of Trust.

Further,

> [e]very conveyance of real property or an estate for years therein, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.

Cal. Civ. Code § 1214.  In other words, "a subsequent purchaser cannot acquire an interest in property superior to the interest of a party that has filed a lis pendens." In re Lane, 980 F.2d 601, 605 (9th Cir. 1992).  As a result, the trustee's Judgment prevails over any purchaser or mortgagee acquiring an interest after March 14, 2007.  As the Quitclaim Deed and the Deed of Trust were recorded well after that date, the rights as determined by the Judgment prevail.

Giovanazzi contends, however, that the lis pendens is void for a host of technical reasons -- failure to serve by certified mail, failure to serve to all known addresses of the parties and owners of record, failure to record a declaration of no known addresses for "secondary owners" Aida Madeleine Lebbos, Cameron

---

6.    The court questions whether the Quitclaim Deed actually effectuated a transfer as it was merely from two individuals as trustees of the Trust to a third as trustee of the Trust.

- 11 -

1  Dacquila, and Brandice Dacquila, and failure to file a copy of
2  the lis pendens in the adversary proceeding.  Giovanazzi cites
3  Cal. Code Civ. Proc. § 405.22, which identifies some of these as
4  requirements for the recording of a lis pendens, and § 405.23,
5  which provides,

6       Any notice of pendency of action shall be void and
        invalid as to any adverse party or owner of record
7       unless the requirements of Section 405.22 are met for
        that party or owner and a proof of service in the form
8       and content specified in Section 1013a has been
        recorded with the notice of pendency of action.
9

10      There is case law supporting the conclusion that a lis
11  pendens that does not comply with these requirements may be
12  expunged.  Orcilla v. Bank of Am., N.A., 2011 U.S. Dist. LEXIS
13  36753, *7 (N.D. Cal. March 25, 2011); Hutson v. Am. Home Mortg.
14  Servicing, 2009 U.S. Dist. LEXIS 96764, *47 (N.D. Cal. 2009);
15  McKnight v. Superior Court, 170 Cal. App. 3d 291, 303 (1985).  On
16  the other hand, Giovanazzi has cited no authority, and the court
17  is aware of none, for the proposition that a lis pendens that is
18  not in compliance with all the requirements of § 405.22 does not
19  provide constructive notice to subsequent purchasers and lienors.
20      In this case, the lis pendens contained the names of Lebbos,
21  Gold, and Carter, as trustees of the Trust; it contained the
22  legal description of the property; and it was recorded in the
23  county in which the property is located.[7]  None of the alleged
24  deficiencies in the lis pendens would have any effect on the
25  notice it provided to the public, and they did not impair the

26
27      7.   The court cannot discern any basis for Giovanazzi's
    contention that the lis pendens "was not filed on the property
28  involved in this case."  Opposition to Motion to Partial Summary
    Judgment, filed August 16, 2011 ("Opposition"), 3:15-16.

- 12 -

1  effectiveness of the lis pendens in achieving its purpose.[8]
2  Thus, the court concludes that any potential purchaser or lienor
3  was on constructive notice of the pendency of the adversary
4  proceeding, and under § 405.24, the rights established by the
5  Judgment relate back to the date the lis pendens was recorded.
6  D.  Effect of the Judgment on the "Unsued Owners"
7       Under this heading, Giovanazzi contends, first, that there
8  is nothing to be "preserved" under § 551 because by the time the
9  Judgment was entered, Gold and Carter had no legal or beneficial
10 ownership interest in the property.  "All that is preserved is
11 nothing as the defendants in case no. 07-2006 had nothing."  This
12 argument overlooks the fact that the Judgment effectuated the
13 avoidance of the transfer by which Gold and Carter had acquired
14 the property and awarded recovery to the trustee, determining
15 that her interest in the property was superior to theirs.  The
16 effect of the Judgment related back to the recordation of the lis
17 pendens; thus, at the time Gold and Carter purported to convey
18 the property to Giovanazzi, they had nothing to convey.
19      The effect of the Judgment was that, effective March 14,
20 2007, the trustee stepped into the shoes of Gold and Carter and
21 succeeded to their rights in the property.  "Under section 551

22 _____

23      8.   The purpose of a lis pendens is to give
             constructive notice of an action affecting
24           real property to persons who subsequently
             acquire an interest in that property, so that
25           the judgment in the action will be binding on
             such persons even if they acquire their
26           interest before the judgment is actually
             rendered.
27
28 Palmer v. Zaklama, 109 Cal. App. 4th 1367, 1375 (2003), citing
   Bishop Creek Lodge v. Scira, 46 Cal.App.4th 1721, 1733 (1996).

- 13 -

the trustee succeeds to such rights as he may defeat in the hands

of the transferee of an avoided transfer." <u>In re Vermont</u>

<u>Fiberglass, Inc.</u>, 44 B.R. 505, 511 (Bankr. D. Vt. 1984), citing

House Report No. 595, 95th Cong., 1st Sess. 376 (1977) and 124

Cong. Rec. H 11,097 (daily ed. Sept. 28, 1978); Senate Report No.

989, 98th Cong., 2d Sess. 91 (1978); <u>see also</u> <u>Van de Kamp's Dutch</u>

<u>Bakeries</u>, 908 F.2d 517, 519 (9th Cir. 1990) ["[A] trustee who

avoids an interest succeeds to the priority that interest enjoyed

over competing interests."].

Next, Giovanazzi argues that as to him, Aida Lebbos,

Brandice Dacquila, and Cameron Dacquila, the Judgment "has no

effect," as they "were never given any notice or opportunity to

appear and defend their ownership."[9]  On the contrary, despite

appeals to the district court and Ninth Circuit Court of Appeals,

as well as a petition for writ of certiorari to the U.S. Supreme

Court, the Judgment is final, and it binds all parties claiming

an interest adverse to that of the trustee.

E.  The Denial of Discharge

Finally, Giovanazzi claims that "since there has been a

denial of discharge, there are no creditors to benefit- just the

plaintiff and her lawyer and their pocketbooks."[10]  He also

contends there is no longer a bankruptcy estate.  This represents

a complete misunderstanding of bankruptcy law.  That Lebbos has

been denied a bankruptcy discharge has nothing to do with the

continuing existence of the bankruptcy estate, with claims

---

9.   Opposition, 9:2-5.

10.  <u>Id.</u>, 10:6-7.

1  against the estate, or with the trustee's power and duty to
2  continue to liquidate property of the estate for the benefit of
3  creditors.

### III.   CONCLUSION

5      For the reasons stated, the court concludes that the trustee
6  has met her burden of producing evidence showing there is no
7  genuine issue of material fact and that she is entitled to
8  judgment as a matter of law, and Giovanazzi has failed to
9  demonstrate the existence of genuine issues of fact for trial.
10 Thus, the court will grant the trustee's motion.

11
Dated: September 30, 2011        _____
12                                ROBERT S. BARDWIL
                                  United States Bankruptcy Judge