

FILED

OCT - 3 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1

2

***POSTED ON WEBSITE***
***NOT FOR PUBLICATION***

3 **UNITED STATES BANKRUPTCY COURT**

4 **EASTERN DISTRICT OF CALIFORNIA**

5

6 In re:                                        Case No. 06-22225-D-7

7 BETSEY WARREN LEBBOS,

8                     Debtor.

9 _____

10 LINDA SCHUETTE,

                                              Adv. Pro. No. 11-2386-D

11                     Plaintiff,

                                              Docket Control No. JG-3
12 v.

13 JOSEPH GIOVANAZZI as trustee,               DATE:  August 31, 2011
                                              TIME:  10:00 a.m.
14                     Defendant.              DEPT:  D

_____

15

16 **This memorandum decision is not approved for publication and may**
**not be cited except when relevant under the doctrine of law of**
17 **the case or the rules of claim preclusion or Issue preclusion.**

18                       **MEMORANDUM DECISION**

19        Defendant Joseph Giovanazzi, as trustee of the Aida

20 Madeleine Lebbos No. 2 Trust and of the Aida Madeline Lebbos

21 Trust II ("Giovanazzi"), has moved for dismissal of this

22 adversary proceeding.  Plaintiff Linda Schuette, chapter 7[1]

23 trustee in the parent case in which this adversary proceeding is

24 pending (the "trustee"), opposes the motion.  For the reasons set

25 forth below, the court will deny the motion.

26 _____

27        1.  Unless otherwise indicated, all Code, chapter, and
section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-
28 1532.  All Rule references are to the Federal Rules of Bankruptcy
Procedure, Rules 1001-9037.

I.  BACKGROUND

A.  Adversary No. 07-2006

On January 3, 2007, the plaintiff filed a complaint seeking to set aside alleged fraudulent transfers of a condominium in Long Beach, California (the "condo" or the "property"), to recover property and/or monetary damages, for turnover of property, and for declaratory relief, Adv. No. 07-2006.  The defendants were the debtor in the underlying chapter 7 case, Betsey Warren Lebbos, individually and as a trustee of the Aida Madeleine Lebbos No. 2 Trust and as a trustee of the Aida Madeline Lebbos Trust II ("Lebbos"), and Jason Gold and Thomas Carter, as co-trustees of the Aida Madeleine Lebbos No. 2 Trust and as co-trustees of the Aida Madeline Lebbos Trust II ("Gold" and "Carter").[2]

On February 5, 2007, Lebbos filed motions to dismiss the proceeding and to transfer the venue of the proceeding to the Central District of California, and on February 28, 2007, Lebbos filed a request to disqualify the undersigned as the judge in the proceeding.  Those motions were denied.  On August 17, 2007, Gold and Carter filed motions to dismiss and to transfer venue and a request to disqualify the undersigned, and Lebbos filed second motions to dismiss and to transfer venue.  On September 6, 2007,

---

2.  During the long history of Lebbos' chapter 7 case, the parties have used both of these names for the trust.  Lebbos, for example, filed an answer in Adv. No. 07-2006 in which she referred to the Aida Madeline Lebbos Trust No. II as non-existent, yet the grant deed by which she purported to convey the property to Gold and Carter, as trustees, refers solely to the Aida Madeline Lebbos Trust II.  The parties have not raised this discrepancy as an issue; for ease of reference here, the court will refer to the "Trust."

Lebbos filed a second request for disqualification.   The motions were denied.   At least two appeals were taken by each of the defendants.

On November 28, 2007, Schuette filed motions against all three defendants for orders imposing sanctions against them, including striking their answers and entering their defaults for failure to appear at depositions and failure to produce documents.   All three defendants opposed the motions.   On February 13, 20, and 21, 2008, the court issued lengthy memorandum decisions explaining its reasons for granting the motions as to each defendant.   On February 22, 2008, Lebbos filed a notice of appeal, and on March 3, 2008, Gold and Carter appealed.   Lebbos and Gold filed motions for a stay pending appeal and Carter filed a joinder to Gold's motion.   The motions were denied.

On March 11, 2008, the trustee filed an application, based on the order entering their defaults, for a default judgment against all three defendants.   On March 26, 2008, Lebbos filed a third request for disqualification of the undersigned, along with opposition to the application for default judgment, and the same day, Gold and Carter filed joinders in Lebbos' opposition.

Hearing on the trustee's application was scheduled for April 9, 2008, and was continued by the court to April 15, 2008.   At the request of attorney John Read, who had by then made several special appearances on behalf of Lebbos in the chapter 7 case and the various adversary proceedings, the court continued the hearing to April 17, 2008.   A hearing was held that day, at which Gold appeared and attorney John Read made a special appearance

- 3 -

for Lebbos.  The same day, this court issued findings of fact and conclusions of law on the plaintiff's application for default judgment against all the defendants, along with a judgment against all of them (the "Judgment"), further described below.

Three days earlier, on April 14, 2008, Gold and Carter, having by that time participated heavily in the adversary proceeding, including seeking to have it dismissed, to have the venue changed, and to have this judge disqualified; having appealed the decisions against them; having thrown up unrelenting roadblocks to the trustee's discovery efforts; knowing full well that their defaults had been entered over their objections; and knowing full well of the hearing on the trustee's motion for default judgment -- at that time, scheduled for the very next day, signed and caused to be recorded a quitclaim deed purporting to transfer the condo to Giovanazzi, as trustee of the Aida Madeline Lebbos Trust II (the "Quitclaim Deed").  The Quitclaim Deed reflects a documentary transfer tax of $0.

On August 13, 2008, Giovanazzi, as trustor, signed a deed of trust purporting to encumber the condo in favor of Aida Madeleine Lebbos, Cameron Dacquila, and Brandon Dacquila, to secure an obligation of $750,000 (the "Deed of Trust").  The beneficiaries are, respectively, Lebbos' daughter and grandchildren.  (The same individuals are also, apparently, the beneficiaries of the Trust.)  The Deed of Trust was recorded on September 19, 2008.  On August 27, 2008, Giovanazzi filed an unlawful detainer action claiming to be the owner of the property and seeking possession (the "Unlawful Detainer Action").

As pertinent to this motion, the Judgment determined that:

- 4 -

• The transfer of the condo from Lebbos, an unmarried woman, to Lebbos as trustee of the Trust, on or about August 19, 2004, is set aside and avoided and is of no force or effect;

• The transfer of the condo from Lebbos as trustee of the Trust to Gold and Carter as trustees of the Trust, on or about May 25, 2005, is set aside and avoided and is of no force or effect;

• Recovery of all right, title, and interest in and to the condo held by Lebbos, Gold, and Carter, in any capacity, is awarded to the trustee, and the interest of the trustee in the condo is superior to any interest of Lebbos, Gold, and Carter, and each of them, in the condo.

The Judgment also granted immediate access to, control over, and possession of the condo to the trustee, and permanently enjoined Lebbos, Gold, and Carter from conveying, transferring, encumbering, or otherwise affecting the title to or encumbrances on the condo.  As seen above, three days earlier, unknown to the trustee, Gold and Carter had signed and recorded the Quitclaim Deed in favor of Giovanazzi.

B.  Prior Role of Giovanazzi

At the time he was named on the Quitclaim Deed, Giovanazzi was no stranger to Lebbos' bankruptcy case.  On January 2, 2008, he had filed two declarations in the case -- one in support of Lebbos' motion to terminate the services of the chapter 7 trustee, the other objecting to the trustee's settlement of a federal district court action brought by Lebbos in 2002.  Giovanazzi testified he was the attorney of record for Lebbos in a $5 to $20 million lawsuit then pending in the Los Angeles

- 5 -

County Superior Court in which Lebbos was suing some former
attorneys of hers for fraud; he referred to overwhelming evidence
of fraud on the part of those attorneys; he accused the trustee
and her attorney of fraud and deceit because they had compromised
the claims asserted in that lawsuit (claims that were clearly
property of the bankruptcy estate); and he stated he had advised
the Los Angeles County Superior Court judge that he might be
requesting the court to issue or approve arrest warrants for the
trustee and her attorney.

C.   The Complaint in this Adversary Proceeding

In the first and third causes of action of this new
adversary proceeding, which are the subject of this motion, the
trustee alleges that:

• The legal effect of the Judgment is that the two avoided
transfers of title are preserved for the benefit of the estate
under § 551;

• The transfer evidenced by the Quitclaim Deed is of no
force and effect as to the estate and the trustee's interest in
the condo; it is void and a nullity and does not grant or create
any interest in the condo in favor of Giovanazzi;

• The transfer evidenced by the Deed of Trust is of no force
and effect as to the estate and the trustee's interest in the
condo; it is void and a nullity and does not grant or create any
interest in the condo in favor of Giovanazzi, Aida Madeleine
Lebbos, Cameron Dacquila, or Brandon Dacquila;

• The Unlawful Detainer Action is of no force and effect as
to the estate and the trustee's interest in the condo; it is void
and a nullity, and does not grant, create, establish, or

1  recognize any interest in the condo in favor of Giovanazzi.

2  <center>II.   ANALYSIS</center>

3      This court has jurisdiction over the motion pursuant to 28

4  U.S.C. §§ 1334 and 157(b)(1).  The Motion is a core proceeding

5  under 28 U.S.C. § 157 (b)(2)(A), (E), (H) & (O).  The Motion was

6  brought pursuant to Fed. R. Civ. P. 12(b)(6), incorporated here

7  by Fed. R. Bank. P. 7012(b).

8  A.  Standards for Dismissal under Rule 12(b)(6)

9      The United States Supreme Court has recently adopted a

10  "plausibility" standard for assessing Rule 12(b)(6) motions,

11  analyzing the complaint before it in terms of whether it

12  contained enough factual allegations, taken as true, to plausibly

13  suggest that the plaintiff was entitled to relief.  Bell Atl.

14  Corp. v. Twombly, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 945

15  (2007).  "[W]e do not require heightened fact pleading of

16  specifics, but only enough facts to state a claim to relief that

17  is plausible on its face."  127 S. Ct. at 1974.

18      The Court did not disturb its earlier pronouncement in

19  Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683 (1974), that on a

20  motion to dismiss, "[t]he issue is not whether a plaintiff will

21  ultimately prevail but whether the claimant is entitled to offer

22  evidence to support the claims."  416 U.S. at 236.  Thus, "a

23  well-pleaded complaint may proceed even if it appears 'that a

24  recovery is very remote and unlikely.'"  Bell Atl. Corp., 127 S.

25  Ct. at 1965, quoting and characterizing Scheuer v. Rhodes, 416

26  U.S. at 236.

27  B.  Giovanazzi's Declaration

28      In ruling on a motion to dismiss pursuant to Rule 12(b)(6),

<center>- 7 -</center>

the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." <u>Outdoor Media Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899 (9th Cir. 2007), citation omitted.  Under the "incorporation by reference" doctrine, a court may also review documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005), citation omitted.

Giovanazzi's declaration in support of the motion does not fall with the "incorporation by reference" doctrine; thus, the court will not consider it.  Further, the declaration consists of (1) legal conclusions, and (2) allegations regarding the history of the Trust, regarding the history of Lebbos' bankruptcy case, and regarding the ownership of the condo as to which Giovanazzi demonstrates no personal knowledge.  For these reasons also, the court will not consider the declaration.[3]

C.  The Statute of Limitations

Giovanazzi contends, first, that the trustee's complaint is barred by the one-year statute of limitations of § 550(f) because it was not filed within one year after entry of the Judgment.[4]

---

3.  Giovanazzi's points and authorities reiterate many of these inadmissible factual allegations and legal conclusions concerning, especially, ownership of the condo and monies allegedly paid for it by the Trust.  As with the declaration, these allegations in the points and authorities will be given no weight.

4.  Section 550(a) provides that to the extent a transfer is
(continued...)

The trustee argues in response that she is not seeking any remedy under § 550, but only under § 551, which provides that a transfer avoided under, for example, § 548 (as in this case) is preserved for the benefit of the estate. Further, any interest in property preserved for the benefit of the estate under § 551 is automatically brought into the estate under § 541(a)(4).

As to avoidable transfers under, for example, § 544, §547, or § 548, there is a distinction to be made between avoidance and recovery. "Congress dealt separately with the concepts of avoidance and recovery in a number of ways." Eisen v. Allied Bancshares Mortg. Corp. LLC (In re Priest), 268 B.R. 135, 138 (Bankr. N.D. Ohio 2000). Thus, "avoidance and recovery are independent remedies," and a trustee is not required to seek recovery under § 550 if avoidance is an adequate remedy. Id.; see also Suhar v. Burns (In re Burns), 322 F.3d 421 (6th Cir. 2003) ["avoidance and recovery are distinct concepts and processes."].

The trustee's position is that avoidance under § 548, together with preservation under § 551 and § 541(a)(4), provides an adequate remedy to the estate, and therefore, § 550 and its remedies and restrictions, such as the statute of limitations in

---

4.(...continued)
avoided as, for example, a fraudulent transfer, the trustee may recover the property transferred or, if the court so orders, the value of the property, for the benefit of the estate. Under § 550(f), an action under § 550 must be brought within one year after the avoidance of the transfer on account of which recovery under § 550 is sought or the time the case is closed, whichever is earlier.

1  § 550(f), are simply not in play here.[5]  She notes that
2  ordinarily, when a trustee has succeeded in avoiding a transfer,
3  "§ 551 provides the default remedy," with a trustee having the
4  discretion to seek an alternative remedy of recovery under § 550.
5  USAA Fed. Sav. Bank v. Thacker (In re Taylor), 599 F.3d 880, 890
6  (9th Cir. 2010), citing Rodriguez v. Daimlerchrysler Fin. Servs.
7  Am. LLC (In re Bremer), 408 B.R. 355, 359 (10th Cir. BAP 2009)
8  ("Preservation is automatic, while recovery is not.  Recovery is
9  necessary only when the remedy of avoidance, and therefore of
10  preservation, is inadequate.").

11      There is a simpler answer; namely, that the trustee obtained
12  the relief available under § 550 at the same time as he avoided
13  the transfers, and there was no need for a further action under §
14  550.  Specifically, in addition to avoiding the transfers by
15  which Gold and Carter as trustees of the Trust ended up with
16  title to the condo, the Judgment also provided that recovery of
17  all right, title, and interest in and to the condo held by
18  Lebbos, Gold, and Carter, in any capacity, is awarded to the
19  trustee, and the interest of the trustee is superior to any
20  interest of Lebbos, Gold, and Carter, and each of them, in the
21  condo.

22      In other words, by way of the Judgment, which has been
23  affirmed by the district court and the Ninth Circuit Court of
24

25      5.  Courts have held that where avoidance is an adequate
26  remedy, the trustee is not required to pursue recovery under §
    550, and the defenses afforded transferees under § 550(c) (non-
27  insider transferee) and § 550(e) (good faith transferee) are not
    available.  Burns, 322 F.3d at 429; Priest, 268 B.R. at 139 (§
28  550(e)); Roost v. Associates Home Equity Servs., Inc. (In re
    Williams), 234 B.R. 801, 805 (Bankr. D. Or. 1999) (§ 550(c)).

- 10 -

1  Appeals and which is now final, the trustee accomplished both

2  avoidance <u>and</u> recovery, and there was no need for further action

3  on the part of the trustee to "recover" the "avoided" transfers.[6]

4  Thus, § 550(f) is irrelevant.  As a result of the Judgment, the

5  effectiveness of which relates back to March 14, 2007, as seen in

6  the court's memorandum decision on the trustee's motion for

7  partial summary judgment, filed September 30, 2011, at the time

8  Gold and Carter signed and recorded the Quitclaim Deed, they had

9  no interest to convey, and at the time Giovanazzi signed and

10 recorded the Deed of Trust, he had no interest to convey.

11 D.  Laches

12      Next, Giovanazzi cites the doctrine of laches, claiming the

13 trustee's alleged delay in bringing this action has "prejudiced

14 the defendants and the unsued owners in being able to bring their

15 witnesses, exhibits, and evidence to trial."[7] [8]  He offers no

16 specifics.

17      "'Laches is an equitable doctrine.'"  <u>Beaty v. Selinger (In</u>

18 <u>re Beaty)</u>, 306 F.3d 914, 926 (9th Cir. 2002), quoting <u>Brown v.</u>

19 <u>Continental Can Co.</u>, 765 F.2d 810, 814 (9th Cir. 1985).  "'It is

20 hornbook law that one seeking equity must do equity,' and that

21 debtors who have 'unclean hands' may not invoke laches."  <u>Beaty</u>,

22 306 F.3d at 925, citation omitted.

---

24     6.  <u>See</u> <u>Lippi v. City Bank</u>, 955 F.2d 599, 605 (9th Cir.
25 1992) [it is customary practice to file a consolidated action to
   avoid a transfer and to recover it or its value].

26     7.  Motion to Dismiss Adversary Case, Declaration, Points
   and Authorities, filed June 24, 2011 ("Motion"), 12:7-9.

27     8.  By the term "unsued owners," Giovanazzi is referring to
28 the beneficiaries of the Trust, Aida Madeleine Lebbos, Cameron
   Dacquila, and Brandon Dacquila.

Considering (1) the multiple motions and appeals prosecuted by the defendants in Adv. No. 07-2006 and by Lebbos in her parent case, all of which unnecessarily and unreasonably delayed the trustee's administration of the case, and (2) Giovanazzi's role as Lebbos' attorney in interjecting himself into the case in an attempt to thwart the trustee's legitimate compromise of a lawsuit that was unequivocally an asset of the estate, there is a good deal of irony in Giovanazzi's invocation of the doctrine of laches.  Also significant are Giovanazzi's delaying tactics since the Quitclaim Deed was recorded, including his refusal to recognize the Judgment and its effect on his ability to encumber and otherwise exercise control over the condo.

As the trustee points out, she waited until Lebbos, Gold, and Carter had exhausted their appeals from the Judgment before bringing this action.  The delay resulting from the appeals is attributable to them, not to the trustee.  Giovanazzi, in turn, is obviously not acting as a stranger to Lebbos, but as her agent in perpetuating her ongoing attempts to prevent the trustee from realizing on the value of the condo for the benefit of the estate, and Lebbos' delays are thus attributable to Giovanazzi as well.  In short, Giovanazzi has failed to establish that the trustee's delay in commencing this action reflects a lack of diligence on her part or that he has suffered any prejudice as a result of it, as required to establish this defense.  <u>Beaty</u>, 306 F.3d at 926.

E.   The Trustee's § 551 Cause of Action

Giovanazzi contends the complaint fails to state a cause of action under § 551 for preservation of avoided transfers, because

- 12 -

(1) the condo is not property of the estate, (2) the owners[9] of the condo were never served with the complaint in Adv. No. 07-2006, and (3) § 551 is to be used to preserve property against persons who have already been subject to an avoidance action; thus, the remedy would be against Lebbos, Gold, and Carter, not Giovanazzi or the unsued owners.

First, "§ 551 <u>automatically</u> preserves the asset for the estate." <u>Heintz v. Carey (In re Heintz)</u>, 198 B.R. 581, 584 (9th Cir. BAP 1996), emphasis added.

> The legislative history stresses the automatic nature of preservation under section 551. . . . This represents a distinct change from former law which required an adversary proceeding to "determine . . . whether the transfer shall be avoided only or shall be preserved for the benefit of the estate."

<u>In re Van de Kamp's Dutch Bakeries</u>, 908 F.2d 517, 519 (9th Cir. 1990). Thus, preservation of the avoided transfers occurred automatically at the time the Judgment was entered; the trustee now merely seeks a declaration confirming that fact, and it is not relevant that Lebbos, Gold, and Carter are not parties to this action.

Second, the condo is property of the estate, pursuant to § 541(a)(4), providing that property of the estate includes any interest in property preserved for the benefit of the estate under § 551.

Finally, the argument that the condo is owned by the Trust, not Lebbos, and that the "owners" were not served with the complaint was raised and determined in Adv. No. 07-2006. In

---

9. Here, again, it appears Giovanazzi refers to himself and to Aida Madeleine Lebbos, Cameron Dacquila, and Brandon Dacquila.

- 13 -

1    particular, in opposition to the trustee's application for entry
2    of default judgment, Lebbos presented 85 pages of exhibits and
3    extensive argument supporting her position that the condo was
4    paid for and owned by the Trust, the trustee filed opposition to
5    that argument, and the court entered findings and conclusions on
6    the record at the hearing.

7         The argument that the beneficiaries of the Trust, as the
8    true owners, were indispensable parties who not served and thus
9    had no opportunity to participate in the action was also raised
10   and is precluded by the Judgment.  Moreover, it is not accurate
11   that a complaint commencing an action against a trust must be
12   served on the beneficiaries of the trust.  Instead, except where
13   an action is between beneficiaries or between a beneficiary and
14   the trustee, the trustee is the real party in interest and the
15   proper party to bring or defend an action involving the trust.[10]
16   Further, a beneficiary of a trust is considered to be in privity
17   with the trustee and is bound by judgments in actions by or
18   against the trustee, although the beneficiary was not a party.[11]
19   F.  Turnover

20        Citing the requirements of § 542(a), Giovanazzi contends the
21   complaint does not state a claim for turnover because (1) the
22   action is not brought "during the bankruptcy case," (2) the condo

23   _____

24        10.  Cal. Code Civ. Proc., § 369(a)(2);  Moeller v. Superior
     Court, 16 Cal. 4th 1124, 1132, n.3 (1997); Greenspan v. LADT LLC,
25   191 Cal. App. 4th 486, 522 (2010); Stoltenberg v. Newman, 179
     Cal. App. 4th 287, 293 (2009); Galdjie v. Darwish, 113 Cal. App.
26   4th 1331, 1349 (2003); Milton H. Greene Archives, Inc. v. CMG
     Worldwide, Inc., 568 F. Supp. 2d 1152, 1170-76 (C.D. Cal. 2008).

27        11.  Carey v. United States, 2010 U.S. Dist. LEXIS 44882,
     *13-17 (E.D. Cal. 2010); Milton H. Greene Archives, Inc. v. CMG
28   Worldwide, Inc., supra, 568 F. Supp. 2d at 1170-76.

is not property the trustee may use, sell, or lease under § 363,
(3) Giovanazzi is not in possession, custody, or control of the
condo, (4) the condo is of inconsequential value or benefit to
the estate.

First, the contention that "there is no pending Bankruptcy
case due to the denial of discharge of the debtor" represents a
misunderstanding of bankruptcy law and process.  That Lebbos has
been denied a discharge has nothing to do with the continuing
existence of the bankruptcy case or the bankruptcy estate.  The
case remains open until it is closed by the court.

Next, Giovanazzi claims Lebbos "has never had any right to
use, lease, or sell the property,"[12] as it was paid for and has
always been owned by the unsued owners.  Thus, under Giovanazzi's
reasoning, the condo is not property the trustee may use, sell,
or lease.  As discussed above, these issues were determined in
the Judgment, which is final and binding; Giovanazzi may not
relitigate them here.

Giovanazzi also contends he does not have possession of the
condo; however, he plainly challenges the trustee's right to
possession and accuses her of interfering with his pending
eviction action (against the trustee's tenants).  The trustee
alleges in her complaint that Giovanazzi has acted as though he
owns the property and has treated it as his own, that he
threatens to foreclose on the property based on the Deed of
Trust, and that he threatens her with other actions to prevent
her rightful efforts to sell or rent the condo.  These

---

12.  Motion, 16:23-24.

- 15 -

allegations, together with Giovanazzi's response admitting that
he asserts the right to possession, are sufficient to state a
claim for turnover.  The trustee also seeks turnover of rents
alleged to have been improperly collected by Giovanazzi;
Giovanazzi has no response.

Giovanazzi's next contention -- that the condo is of
inconsequential value -- is based on his contention that the
amount of the Deed of Trust he executed in favor of the Trust
beneficiaries after the Judgment was entered exceeds the value of
the condo.  However, by way of order and judgment on the
trustee's motion for partial summary judgment, filed September
30, 2011, the court has determined the Deed of Trust to be void
and of no force and effect.  Finally, as a result of that order
and judgment, the trustee need not provide "adequate protection"
of the interests of the alleged "owners" of the property --
whether Giovanazzi or the Trust beneficiaries, as Giovanazzi
claims.

G.  Property Out of the District

Citing Fed. R. Bankr. P. 7070 ("Rule 7070"), incorporating
Fed. R. Civ. Proc. 70 ("Rule 70"), Giovanazzi contends this court
has no jurisdiction to "change title" to the condo as it is
located out of this district.  Rule 70(b) provides that if real
or personal property is within the district, the court may enter
a judgment divesting any party's title and vesting it in others.
However, Rule 7070

> expands upon [this] sentence of Rule 70 by permitting a
> judgment divesting title of any party and vesting title
> in another whenever the subject real or personal
> property is "within the jurisdiction of the court,"
> instead of (as in Rule 70) "within the district."

- 16 -

1    <u>Flinn v. Rains (In re Rains)</u>, 338 B.R. 99, 102 (Bankr. E.D. Cal.

2    2006).  As this court has jurisdiction of property of the estate,

3    "wherever located," 28 U.S.C. § 1334(e)(1), Giovanazzi's argument

4    fails.

5    <u>H.  Remaining Claims</u>

6          Finally, Giovanazzi reiterates arguments Lebbos has made

7    many times in this court and on appeal -- that she did not sign

8    the bankruptcy petition commencing her chapter 7 case, that she

9    never resided in this district, and that the court has and had no

10   jurisdiction over the "owners" of the property, such that the

11   Judgment is of no force or effect.  On all of these issues, the

12   Judgment is final and binding.

13                      III.  CONCLUSION

14         For the reasons stated, the court concludes that each cause

15   of action of the trustee's complaint states a claim upon which

16   relief can be granted, and thus, Giovanazzi's motion will be

17   denied.  The court will issue an appropriate order.

18   Dated: October 3, 2011        _____
                                   ROBERT S. BARDWIL
19                                 United States Bankruptcy Judge

- 17 -